(C. D. 777)

CLOSE & STEWART *v.* UNITED STATES

## United States Customs Court, First Division

(Decided June 9, 1943)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the petitioner.

*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly* and *Frank E. Carstarphen*, special attorneys), for the respondent.

Before OLIVER, WALKER, and COLE, Judges; COLE, J., not participating

WALKER, Judge: This is a petition filed under the provisions of section 489 of the Tariff Act of 1930 for the remission of additional duties assessed by reason of undervaluation on entry of certain proprietary medicines imported from Canada.

Prior to the trial of the case counsel for the respondent made a motion to dismiss the petition on the ground that it did not conform to the requirements of rule 29 of this court, but in the brief filed on behalf of the respondent request is made that the motion be treated as abandoned, and it will not therefore be further considered.

The petitioners are a firm of customhouse brokers who entered the merchandise involved in their own names, declaring in the entry that one George A. Harris was the actual owner for customs purposes. So far as the record or official papers indicate, however, the petitioners were apparently never relieved of responsibility for the payment of additional or increased duties which might be assessed. (See section 485 (d), Tariff Act of 1930.)

The facts leading up to the entry of the merchandise, according to the testimony of Ralph M. Close, a member of the petitioning firm, are as follows: A day or two before the merchandise arrived at Spokane, Mr. Close received a call from George A. Harris, Jr., who was a stranger to him, asking him to meet Harris at the customhouse in Spokane. At the meeting Harris told Close and Deputy Collector Robertson, who was present, that his father was in the business of manufacturing the involved medicines in Calgary, Canada; that it was his (Harris, Jr.'s) intention to open a branch factory in the United States for the manufacture of such medicines, and that the involved shipment had been sent to introduce the products and promote the projected factory, although it appeared that there had been some previous sales in the United States which had been filled by parcel post retail shipments.

Harris turned over to Close the consular invoice covering the shipment at bar, and the question was put to Harris by either Close or Robertson whether the prices shown thereon represented the Canadian wholesale prices, and Harris replied that the prices were below the Canadian wholesale prices. The explanation for this, the witness

said, was that part of the medicine was to be given free with the purchase of another part in the promotion of the project.

After the foregoing conversation Close entered the merchandise at the prices shown on the consular invoice. He never saw Harris again, and the next step, so far as he was concerned, was the appraisement of the merchandise at values exceeding the entered values, in some cases, by 100 per centum.

It appears, from testimony offered on behalf of the respondent, that subsequent to entry and prior to appraisement a questionnaire on customs Form A–173 was sent, under the authority of sections 509 and 510 of the Tariff Act of 1930, to Harris, Jr., in response to which he and his father appeared at the office of an examiner of merchandise at the headquarters port of Seattle. At this meeting Harris, Jr., supplied figures which, it appears, ultimately formed the basis for the appraisement. It also appears that Close was advised in an informal manner prior to entry by the examiner of merchandise at Spokane that he believed the consular invoice values to be somewhat low and that it might be well to make inquiry of the importer as to the exact values.

On this state of the record we do not believe that a finding in favor of the prayer of the petition is warranted. As has been heretofore indicated, it does not appear that responsibility for the payment of additional or increased duties was ever shifted from the petitioners to Harris. Viewed, therefore, from the standpoint of the obligations which the petitioners took upon themselves in so entering the merchandise, it would seem that they could not claim that their conduct measured up to that of the yardstick of a prudent and reasonable person. Close was informed by Harris before making entry that the consular invoice prices were below the Canadian wholesale prices, and by the examiner of merchandise that the values were low and inquiry was in order, yet he entered the merchandise in accordance with the values shown thereon. It is difficult to see how he, a man of many years' experience in customs matters, could hope to justify his act by the fact that part of the medicine was to be given free with the purchase of another part. Certainly he must have known that the value of merchandise, regardless of how acquired, forms the basis of ad valorem duty assessment.

He apparently accepted the responsibility for making the entry and paying the additional or increased duties which would be assessed without making any effort to ascertain what their actual value for duty purposes might be, other than the conversation above referred to, which, we think, would have put a prudent and reasonable man upon notice to question the values given in the consular invoice. It does not appear that at any time he made any other effort to ascertain the correct values of the merchandise.

In the brief filed on behalf of the petitioner it is pointed out that Harris gave the information which later formed the basis for appraisement, and *Electric City Box Co.* v. *United States*, Abstract 41713, is cited in support of the contention that such action warrants a finding of good faith. We observe that the information in question in this case was not volunteered, but was given by Harris only after being called upon by the Government under power conferred by sections 509 and 510 of the Tariff Act of 1930. Further, it may be pointed out that Harris is not the petitioner in the case at bar, and, in fact, apparently never accepted any responsibility to the Government for the payment of any duties in connection with the entry of the merchandise.

For the foregoing reasons the petition is denied. Judgment will issue accordingly.